Application of Danny Lee GRIZZLE,
Petitioner,

v.

Bob TURNER, Sheriff, Oklahoma County, State of Oklahoma,
Respondent.

No. CIV-74-1099-E.

United States District Court,
W. D. Oklahoma.

Jan. 9, 1975.

Philip F. Horning, Bulla & Horning, Oklahoma City, Okl., for petitioner.

Curtis P. Harris, Dist. Atty., and Duane Miller, Asst. Atty., Oklahoma County, Oklahoma City, Okl., for respondent.

## ORDER

EUBANKS, District Judge.

This is a proceeding for a writ of habeas corpus by a prisoner who is presently incarcerated in the Oklahoma County Jail in the custody of the respondent awaiting a second trial in Case No. CRF–73–2426, District Court of Oklahoma County, State of Oklahoma, for the offense of First Degree Murder now docketed for January 13, 1975. He claims to be tried again for this offense would violate his constitutional right not to be "twice put in jeopardy of life and limb" as set forth in the Fifth Amendment to the United States Constitution and made applicable to the states under the Fourteenth Amendment in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

The facts are not in dispute and no evidentiary hearing is required in this court. In said Case No. CRF–73–2426 the petitioner and a co-defendant, Ronald Dean Murray, were charged with the offense of Murder in the First Degree. At their first trial on this charge they were convicted of a lesser included offense of Murder in the Second Degree and their punishment was fixed at a term of not less than ten years nor more than life imprisonment.

Both perfected appeals in the Oklahoma Court of Criminal Appeals. On November 18, 1974, the Court reversed the conviction of both defendants because the trial court failed to conduct separate trials for each defendant. Murray v. State, 528 P.2d 739. The Court then proceeded to remand the case to the trial court "with directions to grant a severance and a new trial for each defendant on the charge of Murder in the First Degree." Petitioner then filed a timely petition for rehearing with the Appeals Court asserting a constitutional right not to be tried for the offense of Murder in the First Degree. The Court on December 4, 1974, denied the petition for rehearing and "for advisory purposes only" further informed the trial court that in the re-trial of the petitioner an instruction on Murder in the Second Degree should not be submitted to the jury "unless additional evidence is presented at the re-trial, warranting the giving of the same."

The petitioner's new trial was docketed for December 9, 1974, in the District Court of Oklahoma County. The petitioner presented to the trial court his plea of former jeopardy which was overruled December 6, 1974, and the case reset for re-trial on January 13, 1975.

It is the general rule that federal courts should not, absent extraordinary circumstances, interfere with the judicial administration and process of state courts prior to trial and conviction even though the state prisoner claims that he is held in violation of the Constitution. Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). There can be no doubt, however, that the federal courts have the power in a proper case to discharge a prisoner in advance

of trial if he is restrained of his liberty in violation of the federal Constitution or laws. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), the Supreme Court stated:

"The exhaustion doctrine is a judicially crafted instrument which reflects the careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a 'swift and imperative remedy in all cases of illegal restraint or confinement.' Secretary of State for Home Affairs v. O'Brien, [1923] A.C. 603, 609 (H.L.). It cannot be used as a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to the purposes that underly the doctrine and that called it into existence." 410 U.S. at 490, 93 S.Ct. at 1127.

Here the fundamental interest underlying the exhaustion doctrine would appear to have been fully satisfied in petitioner's situation. He has already presented his federal constitutional claim of double jeopardy to the courts of Oklahoma. The Court of Criminal Appeals rejected the claim without explanation and the trial court considers itself precluded from an independent examination of the issue by the explicit instruction of the Court of Criminal Appeals to try petitioner on the charge of Murder in the First Degree. Petitioner has exhausted all available opportunities to establish his position that the prior failure of the jury to convict him of Murder in the First Degree constituted an implied acquittal barring a new trial on that charge.

Truly extraordinary circumstances are here presented justifying immediate intervention by this court prior to petitioner's second trial. The highest appellate court of the State has ordered the trial court to do that which is constitutionally forbidden. Under its mandate the trial court is prepared to try the petitioner on January 13, 1975, on the charge of Murder in the First Degree. The law is well settled that this is constitutionally impermissible. In Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, the Supreme Court reviewed the history and development of the double jeopardy plea. On facts identical to those before this court it concluded that a federal prisoner's jeopardy for First Degree Murder came to an end when the jury was discharged upon conclusion of his first trial and that the Fifth Amendment to the Constitution of the United States prohibited his re-trial for that offense. The Court also held that by making a successful appeal from his improper conviction of Second Degree Murder the petitioner had not waived his constitutional defense of former jeopardy to a second prosecution on the First Degree Murder charge. In Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), the Court said that the same rule must apply to the states by virtue of the Fourteenth Amendment to the Constitution of the United States. There the accused was initially tried for Murder and found guilty of the lesser included offense of Voluntary Manslaughter. When his conviction was reversed on appeal he was retried for Murder despite his double jeopardy claim and again found guilty of Voluntary Manslaughter. The Supreme Court rejected the argument made by the State that the second jeopardy was harmless error because the accused was convicted of the same crime at both his first and second trials and suffered no greater punishment on a subsequent conviction. In doing so it stated:

"The Double Jeopardy Clause, as we have noted, is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict. To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly. Further, and perhaps of more importance, we cannot determine whether or not the murder charge against petitioner induced the

jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence." 398 U.S. at 331, 90 S.Ct. at 1762.

These constitutional principles were recognized and applied by the Court of Criminal Appeals of the State of Oklahoma itself in Patty v. State, 497 P.2d 478, decided April 26, 1972. The syllabus by the Court stated:

"Where a trial for murder results in a conviction for the lesser included offense of manslaughter, and that conviction is set aside for a new trial, the defendant may be retried for manslaughter; but defendant may not be tried again for murder since to do so would place defendant in jeopardy again on a charge for which he was impliedly acquitted." 497 P.2d at 478.

It was the law in this circuit prior to the Supreme Court's decision in *Price* that a criminal defendant convicted by a jury of a lesser included offense and acquitted of a greater offense could not be retried by the State on the greater offense after a successful appeal. Booker v. Phillips, 418 F.2d 424 (10th Cir. 1969), and Ward v. Page, 424 F.2d 191 (10th Cir. 1970).

Confronted with a similar situation the court in Rivers v. Lucas, 345 F. Supp. 718 (E.D.Mich.1972), granted the petitioner immediate relief:

"The State argues that to grant relief now is premature since Rivers has not yet been tried for murder. But delay in this case would be futile. It would thwart principles of judicial economy to require Rivers to be tried on the charge of murder and if convicted to exhaust his appeal procedures again, only to return years hence on the same issue. Therefore,

"It is ordered that the petitioner be released from custody unless the State reduces the charge on the information against petitioner to not more than manslaughter." 345 F.Supp. at 719.

This ruling by the district court and the procedure followed was affirmed on appeal. Rivers v. Lucas, 477 F.2d 199 (Mich.1973).

■■■■ The very nature of the protected interest compels immediate redress for the petitioner. As pointed out in Green v. United States, supra:

"The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. In his Commentaries, which greatly influenced the generation that adopted the Constitution, Blackstone recorded:

" ' . . . the plea of *auterfoits acquit,* or a former acquittal, is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence.'

"Substantially the same view was taken by this Court in Ex parte Lange, [85 U.S. 163,] 18 Wall. 163, at page 169, 21 L.Ed. 872:

" 'The common law not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted.'

The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." 355 U.S. at 187–188, 78 S.Ct. at 223.

Once lost the right could never be completely vindicated. The State courts are charged with the same duty as this

court to protect the petitioner in the enjoyment of his constitutional rights. Cook v. Hart, 146 U.S. 183, 13 S.Ct. 40, 36 L.Ed. 934 (1892). His appeal in the first instance to those courts has fallen upon deaf ears. Comity requires no more and abstention now can only lend itself to the certain irreparable violation of petitioner's constitutional rights.

We conclude, therefore, that the petitioner under the Constitution may not be retried on the charge of Murder in the First Degree but may be tried for the Offense of Murder in the Second Degree. Accordingly,

It is ordered:

1. That the Writ of Habeas Corpus is granted to the petitioner on the charge of Murder in the First Degree;

2. The respondent is directed to release the petitioner from custody unless the State on or before the date set for trial, January 13, 1975, reduces the charge on the Information against the petitioner to not more than Murder in the Second Degree.